UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-10068-CV-MARTINEZ
MAGISTRATE JUDGE REID

HORKENE T. CADE,

     Petitioner,

v.

MARK S. INCH,[1]

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE RE
## STATE AMENDED HABEAS CORPUS PETITION - 28 U.S.C. § 2254

### I. Introduction

Petitioner, **Horkene T. Cade,** filed this *pro se* Amended Petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences, entered following consolidated guilty pleas in Monroe County Circuit Court, **Case Nos. 2014-CF-61-AM**, **2014-CF-149-AM**, and **2014-CF-158-AM**. This case has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and S.D. Fla. Admin. Order 2019-02. [ECF No. 25].

The Undersigned has reviewed the Amended Petition [ECF No. 8], Respondent's Response [ECF No. 18], along with its supporting appendices [ECF Nos. 18-1, 18-2, 18-3, 19], and Petitioner's Reply [ECF No. 23]. For the reasons discussed below, the Undersigned **RECOMMENDS** that the Amended Petition be **DENIED**.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), since Mark S. Inch has replaced Julie Jones as the Secretary of the Florida Department of Corrections, he is substituted as the proper respondent in this case.

## II. Claims

Construing the *pro se* Petitioner's arguments liberally, *see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (per curiam), he raises the following eight grounds for relief:

1.  Attorney Heffernan (Withdraw of Plea Counsel) was ineffective for failing to properly argue that Petitioner's pleas were not knowing and voluntary because the court erred in advising Petitioner that he faced a minimum mandatory term of imprisonment. [ECF No. 8 at 5].

2.  Assistant Public Defender Dale Coburn ("APD Coburn") (Plea Counsel) was ineffective for failing to object to the overly broad Information used to establish the factual basis for the charged offenses in Case No. 2014-CF-149-AM. [*Id.* at 7].

3.  APD Coburn was ineffective for failing to file a motion to suppress evidence in Case No. 2014-CF-158-AM, on the basis that the search following Petitioner's vehicular traffic stop was unlawful. [*Id.* at 8].

4.  APD Coburn was ineffective for failing to advise Petitioner of viable affirmative defenses related to carrying or possessing "a pocketknife, brass knuckles, and a collapsible baton" in Case No. 2014-CF-158-AM. [*Id.* at 10].

5.  APD Coburn was ineffective for failing to file a motion to dismiss the Information in Case No. 2014-CF-149-AM, following alleged substantial assistance provided by Petitioner to the Monroe County Sheriff's Department. [*Id.* at 12].

6.  APD Coburn was ineffective for failing to advise Petitioner of purported viable defenses related to Case No. 2014-CF-158-AM. [*Id.* at 14].

7.  APD Coburn was ineffective for failing to seek dismissal of Case No. 2014-CF-149-AM on the basis that Detective Paul Bean was not a material witness to the allegations contained in the Information, and Petitioner's arrest was based on hearsay statements made by Deputy G. Bragg and Sergeant J. Slough. [*Id.* at 15].

8.  Attorney Heffernan was ineffective during the hearing on Petitioner's motion to withdraw for failing to impeach former trial counsel, APD Coburn, with his prior inconsistent statements. [*Id.* at 16].

### III. Relevant Procedural History

Petitioner was charged by Information in three separate Monroe County cases on three separate dates, as follows: (1) **Case No. 2014-CF-61-AM**, failing to register as a career offender, in violation of Fla. Stat. § 775.261(4)2(c) (April 29, 2014) [ECF No. 18-2, Ex. E at 20]; (2) **Case No. 2014-CF-149-AM**, carrying a concealed weapon by a convicted felon, in violation of Fla. Stat. § 790.23(1)(b) (Count 1) and possession of cocaine, in violation of Fla. Stat. § 893.13(6)(a) (Count 2) (July 29, 2014) [ECF No. 18-2, Ex. G at 29]; and, (3) **Case No. 2014-CF-158-AM**, carrying a concealed weapon by a convicted felon, in violation of Fla. Stat. § 790.23(1)(b)[2] (September 2, 2014) [ECF No. 18-2, Ex. I at 37].

On November 12, 2014, Petitioner executed a global, written plea agreement, agreeing to plead no contest to the charges in all three cases. [ECF No. 18-2, Ex. J at 40]. Pursuant to the terms of the plea, the prosecution agreed that Petitioner be adjudicated guilty and sentenced to a total combined term of 15 years of imprisonment as follows: (1) 5 years of imprisonment in Case No. 2014-CF-61-AM; (2) 15 years of imprisonment on Count 1 and a concurrent 5 years of imprisonment on Count 2 in Case No. 2014-CF-149-AM; and, (3) 15 years of imprisonment in Case No. 2014-CF-158-AM. [*Id.* at 41]. All cases and counts, i.e., sentences were to run concurrently. [*Id.*]. The prosecutor agreed Petitioner could be released on furlough and could surrender to commence his incarceration on November 17, 2014. [*Id.*]. The prosecution also agreed, upon Petitioner's timely surrender, to reduce Petitioner's total sentence to a total term of 37.275 months of imprisonment. [*Id.*].

---

[2] Respondent contends that Petitioner was charged by Information in Case No. **2014-CF-158-AM** with carrying a concealed weapon by a convicted felon, in violation of Fla. Stat. § 790.13(6)(a) [ECF No. 18 at 2]; however, this appears to be a scrivener's error as the Information in **Case No. 2014-CF-158-AM** indicates that Petitioner was charged with violating Fla. Stat. § 790.23(1)(b) [ECF No. 18-2 at 37].

On the same day, at a change of plea proceeding, the court accepted Petitioner's plea, adjudicated Petitioner guilty, and imposed Petitioner's sentence in accordance with the written plea. [ECF No. 19-1, Ex. XX at 21-22].[3] The agreed-upon sentence and the furlough was granted. [*Id.*]. After being asked whether he had any questions, Petitioner responded that he did not. [*Id.* at 24].

On November 17, 2014, at 8:22 p.m., a Jail Incident Report was prepared by the Monroe County Sheriff's Office, indicating that Petitioner had failed to surrender as ordered by the court. [ECF No. 18-2, Ex. M at 49]. A bench warrant was issued, and Petitioner was arrested on November 26, 2014. [ECF No. 18-2, Ex's. N, O at 52-57].

On December 2, 2014, Petitioner filed a *pro se* motion to withdraw his guilty pleas in all three cases, pursuant to Fla. R. Crim. P. 3.170. [ECF No. 18-2, Ex. U at 74-77]. A status hearing was held on December 18, 2014. [ECF No. 19-1, Ex. YY at 12-26]. Both Petitioner and APD Coburn were present. [*Id.*]. The court noted that Petitioner had been sentenced to the maximum on each count concurrently, to be mitigated upon his surrender, and that because Petitioner had not returned, he would have to serve the full unmitigated sentence. [*Id.* at 29]. The court also advised Petitioner that he was entitled to have conflict-free counsel represent him with regard to his *pro se* motion to withdraw his guilty pleas. [*Id.* at 29-30]. The court ordered that Attorney Heffernan be appointed to represent him. [*Id.*].

Subsequently, on January 5, 2015, in accordance with Petitioner's plea, separate written Judgments and sentences totaling 15 years were entered in the cases, *nunc pro tunc* to November 12, 2014. [ECF No. 18-2, Ex's. P, Q, R at 59-72].

---

[3] The page numbers in Exhibit XX, and the page numbers for Exhibit XX as referenced in the Response to Order to Show Cause [ECF No. 18 at 4-5], do not correspond with the page numbers as stamped by the Clerk, therefore, for purposes of uniformity, the Court will reference the page numbers as stamped by the Clerk and as indicated on CME/ECF.

Next, Petitioner, represented by Attorney Heffernan, filed a counseled motion to withdraw his guilty plea pursuant to Fla. R. Crim. P. 3.170. [ECF No. 18-2, Ex. T at 79-80]. After an August 17, 2015 evidentiary hearing, the court entered an Order denying Petitioner's motion to withdraw his guilty plea, finding the plea was knowing and voluntary, and not the result of former counsel's erroneous advice. [ECF No. 18-2, Ex. U at 84-88].

Petitioner appealed, but counsel filed an *Anders*[4] brief and moved to withdraw. [ECF No. 18-2, Ex. W at 92-110]. In response to the appellate court's order, Petitioner filed a *pro se* brief, raising seven claims of trial court error. [ECF No. 18-2, Ex. X at 111-114]. On **July 20, 2016,** the Florida Third District Court of Appeal *per curiam* concluded the appeal was wholly frivolous and granted counsel's motion to withdraw in a decision without written opinion. *See Cade v. State,* No. 3D15-2201, 199 So.3d 271 (Fla. 3rd DCA 2016). (unpublished table decision); [ECF No. 18-2; Ex. Y at 116]. Rehearing was denied on **August 17, 2016.** [ECF No. 18-2, Ex. Z at 118].

Petitioner was not permitted to seek discretionary review with the Florida Supreme Court because the affirmance on direct appeal was without a written explanation and did not cite to any decision for which the Florida Supreme Court had accepted review. *See Wells v. State*, 132 So.3d 1110, 1113 (Fla. 2014). Therefore, Petitioner's convictions became final, and the federal limitations period, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as amended, began on **Friday, November 15, 2016,** ninety days after the state appellate court issued its order denying rehearing, when the period for seeking discretionary review with the Supreme Court of the United States expired. *See* Sup. Ct. R. 13; *Gonzalez v. Thaler,* 565 U.S. 134, 150 (2012).

---

[4]*Anders v. California,* 386 U.S. 738 (1967).

However, before Petitioner's conviction became final, he filed a motion to correct illegal sentence, pursuant to Fla. R. Crim. P. 3.800(a) and 3.703(d) on August 31, 2015. [ECF No. 18-3, Ex. GG at 19]. Petitioner claims the sentencing court failed to orally articulate and then file a written statement to support the upward departure from the 37.275 months of imprisonment reflected in the Criminal Punishment Code Scoresheet. [*Id.*].

It appears that, as of October 29, 2019, Petitioner's Rule 3.800(a) motion was not ruled on by the trial court. [ECF No. 18-2, Ex's. A, B, C; ECF No. 18 at 13]. This motion, now pending for over four years, cannot be deemed denied if not ruled upon within sixty days. *See Jones v. State,* 207 So. 3d 230 (Fla. 2nd DCA Jul. 16, 2015) (unpub.) (finding Rule 3.800(a) motion is not deemed denied if not ruled upon within sixty days of its filing); *Edwards v. State,* 951 So. 2d 45, 46 (Fla. 1st DCA 2007) (finding that provision of Fla. R. Crim. P. 3.800(b)(1)(B) that considers motion denied if no order is entered within sixty days does not apply to Fla. R. Crim. P. 3.800(a) motions).

After further proceedings not relevant to the issues before this court, Petitioner filed a *pro se* consolidated motion for post-conviction relief, pursuant to Fla. R. Crim. P. 3.850, raising numerous grounds for relief, including **claims 1 through 8** of this federal Petition. [ECF No. 18-3, Ex. LL at 39-88]. Following the state's response, the trial court entered a lengthy, detailed order denying Petitioner's motion on the merits. [ECF No. 18-3, Ex. NN at 98-105]. The trial court's denial was subsequently *per curiam* affirmed by the Third District Court of Appeal in a decision without written opinion. *See Cade v. State,* No. 3D17-871, 227 So. 3d 585 (Fla. 3rd DCA Jun. 28, 2017) (unpublished table decision); [ECF No. 18-3, Ex. QQ at 148]. Rehearing was denied, and the appeal concluded with the issuance of the mandate on **September 5, 2017.** [ECF No. 18-3, Ex's. SS; TT at 163, 165].

Petitioner filed a petition for writ of mandamus with the Florida Supreme Court, assigned Case No. SC17-2070, requesting that the appellate court be ordered to vacate its decision above and remand the case to the trial court for an evidentiary hearing or other appropriate relief, on the basis that Petitioner's claims were not conclusively refuted by the record. [ECF No. 18-3, Ex. UU at 167-170]. On **November 30, 2017,** the Florida Supreme Court entered an order dismissing the petition on the basis that the court's jurisdiction may not be used to seek review of an unelaborated decision from an appellate court that is issued without opinion or explanation. [ECF No. 18-3, Ex. VV at 179]. The Florida Supreme Court further noted that no motion for rehearing or reinstatement would be entertained. [*Id.*].

Petitioner then came to this court, filing this federal petition on **May 23, 2018**, when he signed and handed it to prison authorities for mailing in accordance with the mailbox rule.[5] [ECF No. 1 at 1]. An amended petition was filed on **June 28, 2018.** [ECF No. 8 at 1, 22].

### IV. Threshold Issues - Timeliness, Exhaustion, and Procedural Default

#### A.  Timeliness

Respondent concedes correctly that this federal petition is timely filed. [ECF No. 18 at 14-15]. Because the 2015 motion to correct illegal sentence is still pending in the state courts, it has stopped the one-year federal limitations clock. Since the federal limitations has not been tolled, the filing of this federal habeas petition is timely.

#### B. Exhaustion

Respondent concedes correctly that claims 2 through 8 of this federal Petition are exhausted because they were raised in the state Rule 3.850 motion and then on appeal following its denial,

---

[5]Absent evidence to the contrary, in accordance with the prison mailbox rule, a *pro se* prisoner's filing is deemed filed on the date it is signed and delivered to prison authorities for mailing. *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001); Fed. R. App. P. 4(c)(1).

thereby presenting the claims to the state's highest court. However, Respondent also correctly argues that **claim 1** is unexhausted. [ECF No. 18 at 17-18]. In claim 1 of this habeas petition, Petitioner asserts that Attorney Heffernan was ineffective for failing to argue, in support of Petitioner's motion to withdraw his guilty plea, that the plea was not knowing and voluntary because it was based on the trial court misadvising Petitioner that he faced a minimum mandatory 3-year term of imprisonment. [ECF Nos. 8, 5]. In his state Rule 3.850 motion, however, Petitioner argued that APD Coburn was ineffective for failing to raise the same substantive issue in support of Petitioner's first motion to withdraw his guilty plea. *See* [ECF No. 18-3, Ex. LL at 49-51].

Petitioner filed a reply, arguing that claim 1 here is the same as claim 1 in the state Rule 3.850 proceeding. [ECF No. 23 at 3]. Petitioner, however, is mistaken. The claims are factually distinct.

In addressing the issue of exhaustion and procedural default, a court must determine whether the claim was raised in the state court proceedings; and if not, whether it was procedurally defaulted from review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging a state conviction. *See* 28 U.S.C. § 2254(b), (c); *Davila v. Davis,* 137 S. Ct. 2058, 2064 (2017) (citing § 2254(b)(1)(A)).   In his traverse, Petitioner does not dispute that the claim is unexhausted, having been raised in the Rule 3.850 proceeding as one challenging APD Coburn's effectiveness, and not Attorney Heffernan's effectiveness, as he has raised here. [ECF No. 23].

Exhaustion is not satisfied if Petitioner merely presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (citation omitted). A petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to

apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Id*. Here, Claim 1 is as to the ineffectiveness of a different attorney in a different legal proceeding, than that raised in his 3.850 motion.

To circumvent the exhaustion requirement, a petitioner must establish that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B); *see Duckworth v. Serrano,* 454 U.S. 1, 3 (1981). No such showing has been made here. As noted previously, claim 1 is unexhausted, having never been raised in the state courts as a challenge to Attorney Heffernan's effectiveness.

### C. Procedural Default

Although Claim 1 is unexhausted, that does not end the inquiry. Respondent argues correctly that the unexhausted claim is now procedurally defaulted from review. [ECF No. 18 at 18]. Because Petitioner has already filed a Rule 3.850 motion and an appeal of its denial, any subsequent attempt to raise the same or similar claim would be subject to dismissal as successive. *See Golfe v. State,* 125 So.3d 876, 878 (Fla. 4th DCA 2013). Even if not successive, it would also be subject to dismissal as untimely. *See* Fla. R. Crim. P. 3.850(b). Thus, the claim is procedurally defaulted from review.

To circumvent the procedural default, a petitioner must show cause and prejudice. *See Martinez v. Ryan,* 566 U.S. 1 (2012). In *Martinez v. Ryan,* the Supreme Court expanded what "cause" may excuse a procedural default, determining that when a state court claim of "ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez,* 566 U.S. at 17; *Lambrix v. Sec'y, Fla. Dep't of Corr.,* 756

F.3d 1246, 1262 n.31 (11th Cir. 2014). To prove that a claim is "substantial," a petitioner must demonstrate that the claim has some merit. *Martinez,* 566 U.S. at 10. Here, Petitioner has shown neither cause nor prejudice for his procedural default of Claim 1.

Further, Petitioner may also receive consideration on the merits if he can demonstrate that a fundamental miscarriage of justice resulting in the continued incarceration of one who is actually innocent would otherwise result. *McQuiggen v. Perkins,* 569 U.S. 383, 387 (2013); *Ward v. Hall,* 592 F.3d 1144, 1157 (11th Cir. 2010) (citations omitted). This exception requires Petitioner to demonstrate actual innocence, not just legal innocence. *See Rozzelle v. Sec'y, Fla. Dep't of Corr.,* 672 F.3d 1000, 1011 (11th Cir. 2012). "Only if [the petitioner] can meet the requirements for proving his actual innocence will he 'then be entitled to have his defaulted claim'... considered on its merits." *Id.* at 1285. Petitioner has not shown actual innocence.

In any event, because Claim 1 warrants no habeas corpus relief and Petitioner suggests in his reply that here he raises the same claim as he raised in ground one of the Rule 3.850 proceedings, this Court may "skip over the procedural bar issues" to deny on the claim on the merits. *See, e.g.*, *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011)(citations omitted); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust [state remedies.]"). Even before the AEDPA's enactment, judicial economy sometimes warranted reaching the merits when they were "easily resolvable against the habeas petitioner." *See, e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Although Claim 1 is both unexhausted and procedurally defaulted from review, the merits of the Claim 1 is addressed below. *See Valle v. Sec'y, Fla. Dep't of Corr.*, 459 F.3d 1206, 1213 (11th Cir. 2006).

## V. Governing Legal Principles

### A. Standard of Review - AEDPA

The court's review of a state prisoner's federal habeas corpus petition is governed by the AEDPA. *See Abdul–Kabir v. Quarterman,* 550 U.S. 233, 246 (2007); *Ledford v. Warden, Ga. Diagnostic & Classification Prison,* 818 F.3d 600, 642 (11th Cir. 2016)). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford*, 818 F.3d at 642 (quoting *Greene v. Fisher,* 565 U.S. 34, 38 (2011)). This standard is both mandatory and difficult to meet. *White v. Woodall,* 572 U.S. 415, 419 (2014).

The AEDPA provides that a federal court may not grant a habeas petition relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United State;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011) (citing 28 U.S.C. § 2254(d)(1)-(2); *Rimmer v. Sec'y, Fla. Dep't of Corr.,* 876 F.3d 1039, 1053 (11th Cir. 2017), *cert. den'd by Rimmer v. Jones,* 138 S. Ct. 2624 (2018) (accord).

The AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state court decisions be given the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766, 773 (2010) (quotation marks and citation omitted); *Lee v. Comm'r, Ala., Dep't of Corr.*, 726 F.3d 1172, 1192 (11th Cir. 2013) (citations omitted). The Eleventh Circuit stresses that "federal courts are not to take a magnifying glass to the state court opinion or grade the quality of it.'" *See Wiggins v. Sec'y, Fla. Dep't of Corr.*, 766 F. App'x 817, 821 (11th Cir. Mar. 12, 2019) (unpub.) (quoting

*Meders v. Warden, Ga. Diagnostic Prison,* 911 F.3d 1335, 1350 (11th Cir. 2019)). Thus, deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster,* 563 U.S. 170, 182 (2011); *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

To review a federal habeas corpus claim, the district court must first identify the last state court decision, if any, that adjudicated the merits of the claim. *See Marshall v. Sec'y, Fla. Dep't of Corr.,* 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Meders,* 911 F.3d 1335, 1351 (11th Cir. 2019) (citing *Harrington v. Richter,* 562 U.S. 86, 100 (2011)). However, if the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the decision to the last related state-court decision that does provide a rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers,* 138 S. Ct. 1188, 1192 (2018).

If the claim was adjudicated on the merits in the state forum, § 2254(d) prohibits re-litigation of the claim unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington,* 562 U.S. at 97-98 (quoting 28 U.S.C. § 2254(d)). A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *See Lockyer v.*

*Andrade,* 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "Clearly established" federal law means "the holdings" and not the "dicta" from controlling precedents of the Supreme Court of the United States at the time of the relevant state court decision. *See Lockkyer v. Andrade,* 538 U.S. at 71 (quoting *Williams,* 529 U.S. at 412).

A state court decision involves an unreasonable application of federal law if the state court applies the correct governing legal principles of the Supreme Court of the United States, but unreasonably applies that principle to the facts of the case. *Id.* The application of the Supreme Court precedent "must be more than just wrong in the eyes of the federal court;" it must also be "objectively unreasonable." *See Virginia v. LeBlanc,* 137 S. Ct. 1726 (2017) (quoting *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas corpus relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, if the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson,* 138 S. Ct. at 1192. As applied here, to the extent Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated pursuant to § 2254(d).

The Supreme Court has made clear that a decision is an adjudication "on the merits" and still entitled to AEDPA deference when it "addresses some but not all of a defendant's claims." *Johnson v. Williams,* 568 U.S. at 298. "The Supreme Court observed that there are good reasons why state courts do not address every single argument made by a defendant, including 'instances

in which a state court may simply regard a claim as too insubstantial to merit discussion.'" *Lee*, 726 F.3d at 1212 (quoting *Johnson,* 568 U.S. at 299).

In any event, "courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (citing § 2254(a)).

The "AEDPA's statutory scheme is designed to strongly discourage" petitioners from presenting new evidence and ensures that "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Cullen,* 563 U.S. at 185 (quoting *Williams,* 529 U.S. at 437; *Harrington,* 562 U.S. 82, 103 (2011); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).

### B. Ineffective Assistance of Counsel

Because the claims raised by Petitioner in this federal habeas proceeding challenge counsel's effectiveness, they are governed by the Supreme Court's two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland,* 466 U.S. at 684–85. When assessing counsel's performance under *Strickland,* the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White,* 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320, 1333–34 (11th Cir. 2012).

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance. . ." *Burt v. Titlow,* 571 U.S. 12, 20 (2013). "Where the highly deferential standards mandated by *Strickland* and the AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt,* 735 F.3d 1311, 1323 (11th Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) he suffered prejudice resulting from that deficiency. *Strickland,* 466 U.S. at 687-88. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland* at 690-91. To uphold a lawyer's strategy, a court need not attempt to divine the lawyer's mental processes underlying the strategy, because there are "countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689. No lawyer can be expected to have considered all those ways. *Chandler v. United States,* 218 F.3d 1305, 1316 (11th Cir. 2000).

To establish deficient performance, Petitioner must show that, in light of all circumstances, counsel's performance was outside the wide range of professional competence. *Strickland, supra.; Cummings v. Sec'y for Dep't of Corr.,* 588 F.3d 1331, 1356 (11th Cir. 2009). Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore,* 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States,* 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Strickland,* 466 U.S. at 697; *Brown v. United States,* 720 F.3d 1316, 1326 (11th Cir. 2013).

## VI. Discussion of Claims

### A. Voluntariness of Plea

As will be recalled, **claim 1**, is unexhausted and procedurally defaulted. To the extent that Petitioner is arguing, as suggested in his Reply [ECF No. 23], that he is raising here the same claim as in **ground one** of his Rule 3.850 motion, this claim does not warrant habeas corpus relief.

In **ground one** of Petitioner's state Rule 3.850 motion, Petitioner argued that APD Coburn was ineffective for failing to argue in support of Petitioner's motion to withdraw his guilty plea, and that the plea was not knowing and voluntary because counsel failed to correct the trial court when it erroneously advised Petitioner that, if he proceeded to trial and were convicted, he faced a 3-year minimum mandatory term of imprisonment. [ECF No. 18-3, Ex. LL at 49]. According to Petitioner, the trial court had the discretion to impose up to a 40-year term of imprisonment, but it was not required to impose a minimum mandatory term of imprisonment. [*Id.* at 50]. Petitioner maintains APD Coburn had a duty to advise and request correction of this error. [*Id.*]. Petitioner suggests that, but for this purported error, he would not have pleaded guilty, and would have proceeded to trial on all charges. [*Id.*].

Respondent argues that Petitioner is not entitled to habeas corpus relief because he cannot demonstrate prejudice under *Strickland*. [ECF No. 18 at 21-22]. This claim, as raised in the Rule 3.850 proceeding, warrants no federal habeas corpus relief because it is clearly refuted by the

change of plea proceedings. Even if it were not, the court's findings of fact at the evidentiary hearing on Petitioner's motion to withdraw his guilty pleas and the rejection of the claim in the Rule 3.850 proceeding are entitled to deference.

The trial court denied relief in the Rule 3.850 proceeding, relying on the testimony adduced at the hearing on the motion to withdraw the pleas, noting it was "satisfied that the Defendant was informed by his counsel that there was no 3-year minimum mandatory sentence," finding APD Coburn properly advised Petitioner "of the correct law regarding sentencing," thereby permitting Petitioner "to make an informed, voluntary plea." [ECF No. 18-3, Ex. NN at 100]. Thus, no deficiency or prejudice under *Strickland* was demonstrated in the state forum. The rejection of the claim was subsequently *per curiam* affirmed on appeal in a decision without written opinion. *Cade v. State,* 227 So. 3d 585 (Fla. 3rd DCA Jun. 28, 2017) (unpublished table decision); [ECF No. 18-3, Ex. QQ at 48]. Petitioner is not entitled to relief on this claim.

1. <u>Applicable Law</u>

Since a guilty plea waives certain constitutional rights, the Fourteenth Amendment's Due Process Clause requires the plea to be both voluntary and knowing. *Rollins v. Sec'y, Fla. Dep't of Corr.,* 613 F. App'x 869, 870 (11th Cir. 2015) (citing *Gaddy v. Linahan,* 780 F.2d 935, 943 (11th Cir. 1986)). There must be an affirmative showing that the plea was intelligent and voluntary before a court accepts a guilty plea. *See Rollins,* 613 F. App'x at 870 (citing *Boykin v. Alabama,* 395 U.S. 238, 242–43 (1969)).

Under federal and Florida law, a plea is knowing and voluntary where the court, for example, satisfies "itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible

range of sentences." *Boykin,* 395 U.S. at 244 n.7 (quoting *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 105-106, 237 A.2d 196, 197-198 (1968).

2. Change of Plea Proceedings

Review of the state record reveals that, at the commencement of the November 12, 2014 change of plea proceedings, APD Coburn advised the court that he had spoken with the Petitioner several times about the prosecution's plea offer, and Petitioner had advised that he would accept the plea, if he were granted a furlough before reporting to jail to serve the sentence. [ECF No. 19-1, Ex. XX at 13]. The prosecution responded that its offer stood, but the court may consider allowing Petitioner to enter the plea and be sentenced that day with mitigation upon turning himself in at the conclusion of the furlough. [*Id.* at 14]. The court mentioned it had recently had "a very bad experience" after granting a furlough, and then took a short recess so that the parties could further discuss the issue with Petitioner. [*Id.*].

When court resumed, after Petitioner was sworn, he confirmed that he wanted to plead no contest to the charges in each of the three cases. [*Id.* at 15]. Petitioner further acknowledged reading, understanding, and signing the written plea form. [*Id.*]. When asked if he had any questions at all about his rights, Petitioner stated he did not. [*Id.*]. Petitioner further confirmed he discussed all of his rights with counsel and was satisfied with counsel's representation. [*Id.* at 15-16].

Next, the court advised Petitioner that, pursuant to the plea agreement, Petitioner would serve concurrent terms of 5 years of imprisonment in Case No. 14-61; 15 years of imprisonment on Count 1 and 5 years of imprisonment on Count 2 in Case No. 14-149; and, 15 years of imprisonment in Case No. 14-158. [*Id.* at 16]. Despite the court's misgivings, the court agreed to the plea agreement stipulation that Petitioner would be furloughed beginning November 12, 2014,

- 18 -

and that he would be required to surrender by 6:00 p.m. on November 17, 2014. [*Id.*]. Once he surrendered, the court informed Petitioner his sentences would be mitigated to a total concurrent term of 37.275 months of imprisonment. [*Id.*]. Petitioner confirmed his understanding of the agreed upon sentences set forth in the negotiated plea. [*Id.* at 17]. Petitioner also understood that he faced a maximum of five years on the third-degree felony offenses, and a maximum of fifteen years on the second-degree felony offenses. [*Id.*]. He denied being promised anything else or otherwise being threatened in order to induce him to change his plea. [*Id.*].

He further confirmed being satisfied with counsel's advice regarding the immigration consequences stemming from the entry of his guilty pleas. [*Id.* at 17, 20]. He understood that, by entering into the guilty pleas, he was forfeiting his constitutional right to a jury trial and to require the prosecution to prove the charges beyond a reasonable doubt. [*Id.* at 17]. The prosecution then set forth the factual basis for each of the cases. [*Id.* at 18-20]. The court accepted Petitioner's pleas, finding them to be clearly and voluntarily entered with knowledge of the consequences, and there appearing to be a factual basis for each of the offenses. [*Id.* at 20-23]. He was then adjudicated guilty and sentenced in accordance with the terms set forth in the negotiated plea. [*Id.*].

3. Relevant Facts Adduced at Hearing Re Motion to Withdraw

An evidentiary hearing was held on Petitioner's motion to withdraw his guilty plea. [ECF No. 19-1, Ex. ZZ at 35-134]. Petitioner was represented by Attorney Heffernan during that proceeding. APD Coburn, Petitioner's former counsel, testified as a prosecution witness that during his meetings with Petitioner, he went over the state's discovery and any plea offers. [*Id.* at 79]. Counsel explained he did not spend much time discussing the plea terms in detail because Petitioner had advised he was not going to accept any plea. [*Id.* at 80].

Originally, the state had extended a plea that would result in Petitioner serving a total sentence of three years of imprisonment. [*Id.* at 88, 103]. Counsel recalled the prosecution mentioning that a firearm had been involved, which would result in a minimum-mandatory term of imprisonment. [*Id.*]. However, counsel believed he rechecked the issue because no firearm had been involved, so there was no minimum mandatory. [*Id.* at 89]. At the change of plea proceeding, APD Coburn recalled advising Petitioner again that there was no three-year minimum mandatory but did advise Petitioner that he "still scored around three years-or over three years as the lowest permissible sentence." [*Id.* at 88].

On November 12, 2014, prior to court, Petitioner informed counsel he would accept the state's 3-year plea if he was granted furlough. [*Id.* at 86]. They were in court because counsel had filed, at Petitioner's request, a motion requesting a 3-day furlough so that Petitioner could secure and move some of his possessions from one location to another. [*Id.* at 85-86].

Based on Petitioner's representation that he would accept the plea if the state agreed to a furlough, counsel then reviewed the entire plea form with Petitioner. [*Id.* at 81]. During a recess, discussions were had regarding changes to the terms of the plea to reflect that the prosecution would only agree to recommend granting Petitioner's requested furlough, if he pleaded guilty to the more severe, 15-year term of imprisonment. [*Id.* at 88]. In exchange, if Petitioner surrendered as court-ordered, then under the plea terms, the prosecution agreed to mitigate Petitioner's sentence to the original 3-year offer. [*Id.*].

At the time, APD Coburn discussed the written form with Petitioner, the charges, the terms of the plea, the rights Petitioner was waiving, including the right to proceed to trial, and the collateral consequences arising from the guilty pleas, including the possibility of deportation if he were not a U.S. citizen. [*Id.* at 81-83]. APD Coburn further testified he would have gone over the

specifics contained in the plea, the fact that Petitioner was eligible for an increased sentence as a habitual offender and was facing a minimum of 37.275 months and up to a maximum term of 40 years of imprisonment. [*Id.* at 83-84]. APD Coburn testified he also reviewed the sentencing scoresheet for accuracy and discussed it in detail with Petitioner. [*Id.*].

Petitioner was cautioned that if he did not surrender on the date the court ordered, he could be charged with escape and instead of receiving a 3-year term of imprisonment, a 15-year term would be imposed. [*Id.* at 90]. Petitioner was also advised that if he did surrender, then his sentence would be mitigated and reduced to the original three years. [*Id.*].

During cross-examination, APD Coburn reiterated that prior to the change of plea he had advised Petitioner that no minimum mandatory was involved, and he again reviewed this fact with him on the day of the change of plea proceedings. [*Id.* at 97]. Counsel was unequivocal that Petitioner understood the ramifications arising from the terms of the plea. [*Id.* at 106-07]. APD Coburn recalled discussing with Petitioner "several times" during the morning of the change of plea that he would be serving the full 15-year term of imprisonment if the court accepted the plea, granted furlough, and then Petitioner failed to surrender as court-ordered. [*Id.* at 107-08].

At the conclusion of the hearing, the court made the following relevant findings:

> The Court's clear recollection of these matters is that, despite the short period of time that transpired in the charging of these informations, the defendant was extremely upset with the time it took to process these cases on numerous occasions he was in court and ultimately led to a *Faretta* hearing on October the 14th, which was less than three months after the filing of the final case against Mr. Cade [Petitioner], at which time he was, obviously, incarcerated.

> Mr. Cade made remarks that Mr. Coburn was overworked and busy and didn't have time to handle his cases, and Mr. Cade was extremely distressed with how these cases were proceeding, despite the fact that he was charged with two second-degree felonies carrying a maximum of 15 years and two third-degree felonies carrying a maximum of five years, and Mr. Cade was impatient and desperate to get his cases resolved.

Ultimately, the Court granted his request to proceed to represent himself in the *Faretta* hearing that was conducted by the Court in October of 2014. Mr. Cade filed numerous motions on his own behalf, and not long after, Mr. Coburn did re-enter the proceedings.

On the 12th of November, the Court clearly recalls that Mr. Coburn represented to the Court that, despite the rather generous offer from the State, at that time Mr. Cade refused to enter a plea unless he was granted a furlough. The transcript of the proceedings reflects what occurred, and the Court recalls giving time for Counsel to speak with Mr. Cade.

\*   \*   \*

. . . Mr. Demmery [Prosecutor] then agreed that he would allow Mr. Cade to enter a plea to the scoresheet that was prepared with regard to these three cases that reflected a minimum possible sentence of 37.275 months. Mr. Cade was offered a plea to 15 years as a maximum on the second-degree felonies, five years on the third-degree felonies with the understanding that those sentences would run concurrently, that he would be allowed the furlough of five days.

The Court in no uncertain terms ordered that he [Petitioner] turn himself in by November the 17th at 6:00 p.m. as is reflected in the plea colloquy and in the minutes taken by the clerk of court. If Mr. Cade did what he was ordered to do, by the grace of the Court allowing his furlough, his sentence would then be mitigated to the lowest possible permissible sentence under the guidelines scoresheet of 37.275 months.

. . . as reflected in the plea form[s] required by the Court, Mr. Cade is, as reflected in the appropriate paragraph in the plea form and by his testimony here today at least, college educated to some level. Mr. Cade is articulate and literate.

He was represented by Mr. Dale Coburn, who is one of the most skillful defense attorneys . . . who zealously represents his clients and did so in this case, which is obviously reflected by Mr. Cade's indication that he not only had no complaints about his attorney, but volunteered as to what a good job Mr. Coburn had done in securing this plea that both the State and the Court were hesitant to accept allowing this furlough, which was abused by Mr. Cade's own behavior, the consequences putting him in the predicament that he is in today.

There is no evidence to support Mr. Cade's position that he was misled by his attorney; to the contrary.

Mr. Coburn indicated that Mr. Demmery, the assistant state attorney at the time, had informed Mr. Coburn that there was a mandatory-minimum involved, and by view of the informations charging Mr. Cade with possession of a weapon by a convicted felon, Mr. Demmery may have mis-supposed that a firearm was

involved, and it was, in fact, Mr. Coburn who brought it to the attention of Mr. Demmery that there was no firearm involved; there were no mandatory-minimum penalties attached to any of these offenses.

And that was made clear to Mr. Cade by the Court in its colloquy with Mr. Cade, who indicated that he understood the maximum penalties for the second-degree felonies were 15 years, the third-degree felonies, five years, and that he would receive the 37.275 months upon successful return from his furlough.

The Court is going to deny the motion to withdraw the pleas in each of these cases based on the findings of the Court after having conducted this evidentiary hearing, and Mr. Cade will be remanded to the custody of the sheriff to serve his previously-imposed sentence.

[ECF No. 19-1, Ex. ZZ at 125-30]. An Order was subsequently entered, applying applicable federal

constitutional principles, memorializing the foregoing findings, and denying Petitioner's motion

to withdraw his guilty plea, in relevant part, as follows:

As reflected in the transcript [change of plea], the Court had taken a recess at Cade's request to allow him adequate time to read the plea form, which was introduced as exhibit 5. Further time was allowed to consider the final offer from the State. The Defendant was placed under oath. . . . He indicated that he had read and understood the form. He indicated that he had no further questions about his rights, which he had discussed with Mr. Coburn. He stated he had had the opportunity to tell Mr. Coburn everything that he wanted to about what had occurred in each of these cases. When asked whether he was satisfied with the way he had been represented he replied, "Yes, m'am." Page 6, line 7.

\*      \*      \*

The Court described in detail the sentence that would be imposed in consideration of Cade's request that he be granted a temporary furlough. He was to receive 15 years for each second-degree felony and five years for the third degree felonies, to run concurrently on each count in each case. He was also told that he would receive credit for the time he had served in the Monroe County Detention Center in connection with these cases.

It was explained to the Defendant that he would be released for a furlough that day, November 12, 2014. He was told that he would be ordered to return to the jail by 6:00 p.m., November 17, 2014. Cade was told that upon his return, his sentences would be mitigated or reduced to 37.275 months on all counts concurrently.

\*      \*      \*

> . . . In this case, other than the Defendant's self-serving testimony, there is no evidence of involuntariness of the plea, or ineffective assistance of counsel. The transcript of the plea colloquy and sentencing confirm the opposite. The Defendant was afforded ample time to consult with his attorney. It was at the Defendant's insistence that he would accept no plea without a furlough that the State made its offer to the Defendant. The Defendant's own actions in refusing to comply with the Court's order that he return from his furlough on November 17, 2014 resulted in the denial of the mitigation that would have been imposed on his sentence[s].

[ECF No. 18-3, Ex. U at 84-88]. The foregoing was subsequently affirmed on direct appeal. *See Cade v. State,* No. 3D15-2201, 199 So. 3d 271 (Fla. 3rd DCA 2016) (unpublished table opinion); [ECF No. 18-2, Ex. Y at 116].

4. Analysis

Entry of the guilty pleas was clearly in the Petitioner's best interest. Because of the negotiated plea, Petitioner avoided a significantly higher term of 40 years of imprisonment. Further, had he complied with the court's order and surrendered as directed, his total sentences would have been reduced to 37.275 months of imprisonment.

Therefore, Petitioner has not demonstrated here nor in the state forum, that but for any purported error by the court or counsel, he would not have pleaded guilty and would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985). Petitioner's plea was knowing and voluntary.

Moreover, by entering into the negotiated guilty plea, Petitioner was telling his lawyer not to conduct any further investigation and not present at a pre-trial or trial proceeding any legal defenses in his case. It is well settled that a petitioner waives or more accurately, forfeits his right to contest all non-jurisdictional defects and defenses, when he enters a knowing and voluntary guilty plea. *See United States v. Broce,* 488 U.S. 563, 764 (1989) (citing *McMann v. Richardson,* 397 U.S. 759, 770 (1970) (voluntary guilty plea waives all non-jurisdictional defects)); *United States v. De La Garza,* 516 F.3d 1266, 1271 (11th Cir. 2008) (quoting *Wilson v. United States,* 962

F.2d 996 (11th Cir. 1992) (claim of ineffective assistance of counsel relating to pre-plea issues waived by voluntary guilty plea)).

Where, as here, Petitioner swears under penalty of perjury at the change of plea proceeding that he is satisfied with counsel's advice, and that no one coerced, threatened, or made any promises to induce him to change his plea, there is a strong presumption that his representations are true. *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994) (citing *United States v. Gonzalez-Mercado,* 808 F.2d 796, 799-800 (11th Cir. 1987)); *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.") (citing *United States v. Hauring,* 790 F.2d 1570, 1571 (11 Cir. 1986)). The guilty plea was clearly entered in compliance with all applicable constitutional principles. *See Boykin,* 395 U.S. at 243, n. 7.

The AEDPA affords a presumption of correctness to a factual determination made by a state court, and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. §2254(e). Petitioner has clearly not done so here and has provided no basis to redetermine the trial court's factual findings. Without evidence that counsel's advice to accept the plea offer was incorrect or evidence that counsel failed to give material advice, Petitioner cannot establish deficient performance under *Strickland. See Burt v. Titlow,* 571 U.S. 12, 19 (2013) (quoting *Strickland,* 466 U.S. at 689); *Chandler,* 218 F.3d at 1317 (rejecting ineffective assistance of counsel claim because there was insufficient evidence to prove "trial counsel's acts were outside the wide range of professionally competent assistance").

Thus, the state court's factual findings are entitled to deference in this federal habeas proceeding, and therefore, should not be superseded by this court on habeas review. *See Miller-El v. Cockrell,* 537 U.S. 322, 324 (2003) ("a decision adjudicated on the merits is a state court and

based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."); *see also Gore v. Sec'y, Dep't of Corr.,* 492 F.3d 1273, 1300 (11th Cir. 2007) (citing *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

### B. Overly Broad Information in Case No. 2014-CF-149-AM

In **claim 2,** Petitioner asserts that counsel failed to object to the "overly broad" Information in Case No. 2014-CF-149-AM, used to establish a factual basis for the plea, because it did not allege the "prohibited conduct." [ECF No. 8 at 7]. Thus, Petitioner concludes the Information could not be used to establish a factual basis for the charged offense. [*Id.*].

When the identical claim was raised in the Rule 3.850 proceeding, it was denied by the trial court, which noted that a factual basis for a plea is elicited in order to avoid a defendant pleading to the wrong offense. [ECF No. 18-3, Ex. NN at 100]. The court rejected the claim finding a mere "technical defect" in a change of plea proceeding will not warrant withdrawal of the plea where, as here, Petitioner has not demonstrated prejudice or manifest injustice. [*Id.* at 101]. That denial was subsequently *per curiam* affirmed on direct appeal in a decision without written opinion. *See Cade v. State,* No. 3D17-871, 227 So. 3d 585 (Fla. 3rd DCA Jun. 28, 2017) (unpublished table decision); [ECF No. 18-3, Ex. QQ at 148].

The record supports the state court's findings that Petitioner signed the written plea agreement and understood what he was signing. In the executed written plea agreement, Petitioner acknowledged he "read the information/indictment/waiver" and understood its contents. [ECF No. 18-2, Ex. J at 40]. Petitioner understood and agreed he was voluntarily pleading *nolo contendere,* in Case No. 2014-CF-149-AM, to carrying a concealed weapon by a convicted felon (Count 1)

and possession of cocaine (Count 2). [*Id.*]. He also understood that he was giving up his right to

have the prosecutor recite to the court the factual basis prior to the court accepting his pleas. [*Id.*].

> The original Information charged Petitioner with carrying a concealed weapon, as follows:
>
> . . . Defendant, Horkene Terrell Cade on or about April 13, 2014, in the County of Monroe and State of Florida, Horkene Terrell Cade, being a career offender, did, after having been convicted of a felony in the courts of Florida, or after having been convicted of or found to have committed a crime against the United States which is designated as a felony, or having been found guilty of an offense that is a felony in another state, territory or county and which was punishable by imprisonment for a term exceeding one year, unlawfully own or have care, custody, possession, or control of a firearm or electric weapon or device, or carried a concealed weapon, including any tear gas or gun or chemical weapon or device, contrary to Florida Statute 790.23(1)(a),(c),(d), and (e).
>
> COUNT 2: . . . Defendant, Horkene Terrell Cade on or about April 13, 2014, in the County of Monroe and State of Florida, was unlawfully and knowingly in actual or constructive possession of cocaine or ecgonine, including any stereoisomer, salt, compound, derivative or preparation of cocaine or ecgonine, a controlled substance, contrary to Florida Statute 893.13(6)(a).

[ECF No. 18-2, Ex. G at 29].

At the November 2014 plea hearing, Petitioner pleaded no contest to the charges in the

Information. [ECF No. 19-1, Ex. XX at 11-26]. As stated previously in relation to claim 1 above,

after being placed under oath, Petitioner affirmed that he signed, read, and understood the plea

form. [*Id.* at 5-6]. He confirmed speaking with counsel about the contents of the plea and stated he

was satisfied with counsel's representation. [*Id.*]. Further, the prosecution summarized the offenses

as charged, identifying Petitioner as the defendant, the date and location of the offenses, the

applicable Florida Statute violated, and the elements of each offense. [*Id.*]. When asked by the

court if he had had the opportunity to discuss the charges with counsel, Petitioner responded in the

affirmative, and further indicated that counsel "did a good job." [*Id.* at 10]. Petitioner certified in

the plea agreement that he read the charging instrument and understood the charges set forth

therein, stating under oath that he understood he was pleading no contest to the charges in the

information. [*Id.*]. The court accepted Petitioner's plea, finding there to be a factual basis for each of the offenses. [*Id.* at 10-11].

"[T]he due process clause does not impose a constitutional duty on state trial judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere that is not accompanied by a claim of innocence." *Wallace v. Turner,* 695 F.2d 545, 548 (11th Cir. 1983). When a guilty or no contest plea is accompanied by a claim of innocence, the Constitution allows a court to accept the plea provided it has a factual basis. *See North Carolina v. Alford,* 400 U.S. 25, 38 (1970). Petitioner does not assert here that he claimed innocence at the change of plea hearing. Even if he had, he has not shown that the plea was not voluntary and intelligently made. The arrest warrant supported the charged offense. Further, he waived presentation of the factual basis for the plea in his negotiated plea agreement. He has therefore not demonstrated deficiency or prejudice under *Strickland* arising from counsel's failure to pursue this non-meritorious issue. Under these circumstances, the rejection of this claim during the Rule 3.850 proceeding was neither contrary to, nor an unreasonable application of, clearly established federal law. Thus, Petitioner is not entitled to federal habeas corpus relief. *Williams v. Taylor, supra.*

### C. Failure to File Motion to Suppress

In **claim 3,** Petitioner claims counsel was ineffective for failing to file a motion to suppress evidence seized in Case No. 2014-CF-158-AM on the basis that the search following Petitioner's vehicular traffic stop was unlawful. [ECF No. 8 at 8]. He maintains he was unlawfully detained for almost an hour, without being able to "go about his business," after "completion of the traffic stop," and issuance of a traffic citation. [*Id.*]. As discussed below, Petitioner is not entitled to relief on this claim, because he cannot satisfy the two-prong *Strickland* test.

In the Rule 3.850 proceeding, Petitioner argued that he was pretextually stopped on June 28, 2014, because of unlawful, dark window tints. [ECF No. 18-3, Ex. LL at 54-55]. After another patrol officer arrived on scene with a K-9 officer, the K-9 officer alerted to Petitioner's vehicle. [*Id.* at 55]. Petitioner maintained that, given the officer's prior dealings with Petitioner, and the fact that his vehicle's window tints were not below the AS1 line, the vehicular stop was pretextual and unlawful. [*Id.* at 58].

The trial court denied relief, finding that it had previously determined Petitioner was "anxious to plead and resolve the litigation before discovery could be completed, thereby short-circuiting discovery and motion practice." [ECF No. 18-3, Ex. NN at 101]. The court commented that Petitioner "sought a rush to judgment," so that "the blame for discovery and motion practice deficiencies, if any, must be placed at the Defendant's feet." [*Id.*]. The trial court's rejection of the claim was subsequently *per curiam* affirmed on appeal in a decision without written opinion. *See Cade v. State,* No. 3D17-871, 227 So. 3d 585 (Fla. 3rd DCA 2017) (unpublished table decision.); [ECF No. 18-3; Ex. QQ at 148].

Where, as here, defendant claims counsel was ineffective for failing to file a motion to suppress prior to the change of plea, the claim is not simply waived by entry of a voluntary plea, but rather "both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress." *See Arvelo v. Sec'y, Fla. Dep't of Corr.,* 788 F.3d 1345, 1348 (11th Cir. 2015) (finding a voluntary plea does not waive an ineffective assistance of counsel claim, and courts must continue to apply the two-part *Strickland* test).

Here, Petitioner has not demonstrated either in the state forum or this habeas proceeding that such a motion to suppress would have been granted. In *Illinois v. Caballes,* 543 U.S. 407, 407 (2005), the Supreme Court of the United States made clear that a dog sniff conducted during a

lawful vehicular traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures. The Supreme Court of the United States explained that no Fourth Amendment violation occurs during such a search, where the K-9 dog alerts to the presence of "a substance that no individual has any right to possess." *Caballes,* 543 U.S. at 410. The court cautioned, however, that a vehicular stop "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a traffic citation or, as in that case, a warning. *Rodriguez v. United States,* 575 U.S. 348, 354-55 (2005) (citing *Caballes,* 543 U.S. at 407). But the seizure will remain lawful "so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Id.* (citing *Arizona v. Johnson,* 555 U.S. 323, 333 (2009) and *Muehler v. Mena,* 544 U.S. 93, 101 (2005) (finding that unrelated inquiries did not extend the time of detention so that no additional Fourth Amendment justification was required)). In *Rodriguez,* the court cautioned that an officer may not conduct certain unrelated checks in such a way so that it "prolongs *i.e.,* adds time to-'the stop,'" absent reasonable suspicion ordinarily required to justify detaining an individual.

As applied, the Monroe County Sheriff's Department Offense Report reveals that on July 28, 2014, Officer Danielle Malone responded to the parking lot of 7200 Aviation in Marathon, Florida following a Florida Highway Patrol vehicular traffic stop. [ECF No. 18-2, Ex. H at 34]. The Offense Report indicates that the "Range of Occurrence Date/Time" was listed as July 28, 2014, at 11:32 p.m. [*Id.*]. Officer Malone requested that Petitioner step out of the vehicle, and Deputy Torres requested that the passenger, Yvonne Williams, also exit the vehicle. [*Id.*]. Officer Malone then retrieved K-9 Officer Tracer, walked her to the front of the vehicle, and commanded her to sniff for narcotics, directing her around to the driver's side. [*Id.*]. As the K-9 approached the driver's front door, it alerted to the presence of illegal narcotics. [*Id.*]. Officer Malone then searched the vehicle, locating a large folding knife and brass knuckles in the pocket of the driver's

door, and an expandable baton under the driver's seat. [*Id.* at 35]. On the passenger floorboard, Officer Malone located a "FTP marijuana shake," which field tested positive for marijuana. [*Id.* at 35]. Petitioner was arrested for possession of a weapon by a habitual violent career offender. [*Id.*].

The Florida Highway Patrol's Arrest Report is consistent with the Monroe County Sheriff's Report.  Trooper McGlynn, who arrested Petitioner, narrates that he was on routine patrol when he observed a white Lincoln traveling south on US 1 in the area of mile marker 51, with the front window tints below the AS1 line, and thus, he conducted a vehicular traffic stop. [*Id.*]. As he approached the driver side of the vehicle, he identified Petitioner by his driver's license, and advised Petitioner of the reason for the stop. [*Id.*].

According to Trooper McGlynn, Deputy Malone arrived on the scene as a routine back-up. [*Id.*]. At that time, she conducted a "free air sniff," and her K-9 alerted on the vehicle for narcotics. [*Id.*]. Thereafter, Deputy Malone recovered from the vehicle a Green Beret knife, a set of brass knuckles, a black metal collapsible baton, and a "shake" containing marijuana residue which field tested positive for marijuana. [*Id.*]. A record check confirmed Petitioner was a habitual violent felony offender, and not permitted to possess any concealed weapon. [*Id.*]. Petitioner was arrested for possession of a concealed weapon while maintaining a status as a habitual violent felony offender. [*Id.*].

Petitioner's suggestion that the vehicular traffic stop had ended before the K-9 Tracer alerted to his vehicle is unsupported by the record. Deputy Malone and her K-9 arrived as "routine back-up" at the scene within minutes of Trooper McGlynn, and certainly before Trooper McGlynn had issued a citation for the unlawful tints or run a records check on Petitioner. While the traffic violation was ongoing and under investigation, Deputy Malone conducted a "free air sniff" around the vehicle and the K-9 officer alerted to narcotics.

Unlike the *Rodriguez* decision, nothing in the record supports Petitioner's conclusory allegation that the traffic citation was completed, and he remained unlawfully detained while the dog sniff occurred. Moreover, there is no evidence to support a finding that the K-9 sniff added time to the vehicular stop. *Id.* at 1615.

Petitioner bears the burden of proof, which he has not met here. Petitioner has not demonstrated that his Fourth Amendment rights were violated. He has also not shown that, even if counsel had filed the motion, that it would have been granted by the trial court. Other than Petitioner's own conclusory statement that the traffic stop was completed prior to the search, Petitioner has not shown deficiency or prejudice under *Strickland* arising from counsel's failure to pursue this claim or otherwise advise him of the viability of pursuing this claim prior to his change of plea.

It also bears mentioning that Petitioner was granted permission to proceed *pro se* prior to his change of plea and it was not until November 6, 2014 that counsel was re-appointed to represent Petitioner. Thus, Petitioner could have filed his own *pro se* motion to suppress. He did not do so, and thus waived the issue. Regardless, he has not shown that the filing of such a motion would have been successful, having failed to show that "[n]o reasonable lawyer would forgo competent litigation of meritorious, possible decisive claims." *See Kimmelman v. Morrison,* 477 U.S. 365, 382 n.7 (1986).

His conclusory suggestion that he would have insisted on proceeding to trial, but for counsel's failure to file the suppression motion is directly refuted by his sworn allegations at the change of plea proceedings and is thus rejected as incredible. Although the state court rejected the claim on the basis of waiver, the rejection should stand, arguably for the reasons discussed herein, because Petitioner has failed to demonstrate entitlement under *Strickland*.

### D. Failure to Advise Re Viable Defense to 2014-CF-158-AM Charge

In **claim 4,** Petitioner asserts that counsel was ineffective for failing to investigate and advise him prior to the change of plea that he had a viable defense to the charges in Case No. 2014-CF-158-AM. [ECF No. 8 at 10]. Petitioner claims the seized "pocket knife," brass knuckles, and collapsible baton were "clothing designer wear" required for his employment. [*Id.*]. Petitioner cannot demonstrate prejudice arising from counsel's failure to pursue this non-meritorious issue.

In the Rule 3.850 motion, Petitioner argued that the items were not "concealed," nor were they on his person. [ECF No. 18-3, Ex. LL at 62-63]. According to Petitioner, the items were either exempt under statute, were common household items, or were used for legitimate employment purposes as a security guard. [*Id.*]. Thus, he suggests he had a viable defense to the charge for carrying a concealed weapon by a convicted felon. [*Id.*]. Regarding the "pocket knife," he argued it had a blade less than four inches in length, so that it did not satisfy the statutory definition of a weapon under Fla. Stat. § 790.001(13). [*Id.* at 63]. He claims Deputy Malone has a lodged a campaign of conducting numerous vehicular traffic stops in order to harass him. [ECF No. 18-3, Ex. LL at 56-57]. He argues that Trooper McGlynn's traffic cam video would prove that Deputy Malone's "free dog sniff" was conducted after Trooper McGlynn had already issued and completed the traffic citation. [*Id.* at 58]. Petitioner has not provided a copy of the video either here or in the state forum. It was his burden there and here to prove the merits of the claim. He has not done so.

The trial court denied relief, finding that Petitioner was "anxious to plead and resolve the litigation before discovery could be completed, thereby short-circuiting discovery and motion practice." [ECF No. 18-3, Ex. NN at 101]. Because the Petitioner "sought a rush to judgment, the blame for discovery and motion practice deficiencies, if any, must be placed at Defendant's feet."

[*Id.*]. This denial was subsequently *per curiam* affirmed on appeal in a decision without written opinion. *See Cade v. State,* No. 3D17-871, 227 So. 3d 585 (Fla. 3rd DCA Jun. 28, 2017) (table) (unpub.); [ECF No. 18-3, Ex. QQ at 148].

While a defendant's counsel has a duty "to reasonably investigate avenues of defense (or make a reasonable decision to not do so)." *Martinez v. Sec'y, Fla. Dep't of Corr.,* 684 F. App'x 915, 923 (11th Cir. Apr. 11, 2017), the duty to investigate facts or defenses must be reasonable under the circumstances, and counsel's performance is deficient only if Petitioner demonstrates "no competent attorney" would have failed to pursue the defense, given the facts known to counsel at the time." *See Martinez,* 684 F. App'x at 923 (citations omitted).

Petitioner was charged in Case No. 2014-CF-158-AM, in relevant part, with carrying a concealed weapon by a convicted felon, in violation of Fla. Stat. 790.23(1)(a), (c), (d), and (e). [ECF No. 18-2, Ex. I at 37]. As relevant here, Florida Statute § 790.23 prohibits an individual from owning or having in his care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or from carrying a concealed weapon, including a tear gas gun or chemical weapon or device, if that individual has been:

       (a)     Convicted of a felony in the courts of this state; . . .

       (c)     Convicted of or found to have committed a crime against the United States which is designated as a felony;

       (d)     Found to have a committed a delinquent act in another state, territory, or country that would be a felony if committed by an adult and which was punishable by imprisonment for a term exceeding 1 year and such person is under 24 years of age; or

       (e)     Found guilty of an offense that is a felony in another state, territory, or country and which was punishable by imprisonment for a term exceeding 1 year.

*See* Fla. Stat. § 790.23(1)(a), (c), (d), (e) (2014).

A "concealed weapon" is defined as "any dirk, metallic knuckles, billie, tear gas gun, chemical weapon or device, or other deadly weapon carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person." *See* Fla. Stat. § 790.001(3)(a) (2014). "Ordinary sight," as used in Fla. Stat. § 790.001(3)(a) means "the casual and ordinary observation of another in the normal associations of life." *See Dorelus v. State,* 747 So. 2d at 371 (citing *Ensor v. State,* 403 So. 2d at 354). Excluded from the statute's definition of a "weapon" are, in relevant part, "a common pocketknife, plastic knife, or blunt-bladed table knife." *See* Fla. Stat. § 790.001(13). Further, an individual cannot carry a weapon, as that term is defined under the statute, in a vehicle, without ensuring that it is securely encased or otherwise not accessible. *See* Fla. Stat. § 790.25(5) (2014).

For a weapon to be concealed, it need not be absolutely invisible. *See Dorelus v. State,* 747 So. 2d 368 (1999) (citing *Ensor v. State,* 403 So. 2d 349, 354 (Fla. 1981)). Courts may consider the nature, type, and size of a weapon in determining whether it was concealed, but "in all instances common sense should prevail," and "the focus should remain on whether the weapon was carried in such a manner as to conceal it from ordinary sight." *Dorelus v. State,* 747 So. 2d at 372 (citations omitted). Thus, the charged offense can be proven with evidence that the weapons were in Petitioner's "possession or ready reach and that it was hidden from the sight of an ordinary person." *See State v. Blanco*, 702 So.2d 597 (Fla. 2d DCA 1997) (holding that a weapon stashed between the seats of a car was concealed); *State v. Hinkle,* 970 So.2d 433 (Fla. 4th DCA 2007) (finding that a firearm on the seat of a car, covered with flowers, qualified as a concealed weapon).

As applied, both Deputy Malone and Trooper McGlynn narrated that they recovered a "large" knife, identified as a Green Beret stainless steel knife with a black handle, and a set of brass knuckles from the inside of the driver's door. [ECF No. 18-2, Ex. H at 32, 35]. Neither stated

that the items were readily observable. Moreover, a baton was found concealed under the driver's seat. [*Id.*]. Petitioner was sitting in the driver's seat, next to the driver's door from where the brass knuckles and Green Beret knife were recovered. The baton was also underneath Petitioner's seat. Given the facts of this case, it appears the items were concealed from the view of an ordinary person, and were readily accessible to Petitioner, who was sitting in the driver's seat. Thus, the evidence was more than sufficient to support the charged offenses. *See Dorelus v. State,* 747 So. 2d at 372-73 (citing *Carpenter v. State,* 593 So. 2d 606, 607 (Fla. 5th DCA 1992)). In order to defeat a motion to dismiss, the state is only required to adduce sufficient facts to establish only the "barest *prima facie* case." *See State v. Yarn,* 63 So. 3d 82, 85 (Fla. 2nd DCA 2011) (citations omitted).

The state court's rejection of the claim was not improper, because Petitioner has not shown either in the state forum or this habeas proceeding that counsel was deficient for failing to pursue this non-meritorious claim prior to his change of plea. Moreover, it bears mentioning that Petitioner was also proceeding *pro se* in the state forum until November 6, 2014 and he could have filed his own suppression motion but did not. Therefore, the rejection of the claim should stand, albeit for the reasons expressed herein. *Williams,* supra.

### E. Viable Defense to Case No. 2014-CF-149-AM Charges

In **claim 5,** Petitioner asserts that trial counsel was ineffective, in relation to Case No. 2014-CF-149-AM, for failing to seek dismissal of the charges on the basis that Petitioner had "abided" by the terms of an oral agreement to provide "substantial assistance" to the Monroe County Sheriff's Department. [ECF No. 8 at 12]. In related **claim 7,** he faults counsel for failing to seek dismissal of the information because Detective Paul Bean was not a "material witness" to the charges. [*Id.*].

When raised in the Rule 3.850 proceeding, Petitioner argued that ground five had two ineffective assistance components arising from (1) the failure to advise Petitioner of the affirmative defense to the carrying of a concealed weapon offense; and (2) failing to ascertain facts and information regarding Petitioner's cooperation with Detective Bean in order to seek dismissal of the information based on Petitioner's compliance with the negotiated plea worked out with the detective. [ECF No. 18-3, Ex. LL at 65].

There, Petitioner claimed that, after his April 13, 2014 arrest, he spoke with Deputy Paul Bean ("Deputy Bean") with the Martin County Sheriff's Office, who agreed not to file charges relating to the knife and crack cocaine if Petitioner provided useful information during and after his release from jail. [ECF No. 18-3, Ex. LL at 64-65]. He maintains Deputy Bean reneged on his promise. [*Id.* at 65]. Petitioner explained that, at the time, he was using a "kitchen knife" to "eat a mango" when officers approached his vehicle, and he claims he did not attempt to hide or conceal the knife. [*Id.*]. He argued that Detective Bean acted upon information provided to him by individual(s) who investigated and arrested Petitioner, or by Petitioner during his substantial assistance discussions. [*Id.* at 69]. He explains that Detective Bean was not the arresting officer and was not present at the time of Petitioner's arrest. [*Id.* at 75].

The trial court denied relief finding that "Detective Bean could offer such testimony as he was intimately connected with the prosecution through participation in the investigation with his fellow officers," citing *State v. Bowers,*[6] 87 So. 3d 704, (Fla. 2012). [ECF No. 18-3, Ex. NN at 102-03]. That finding was subsequently affirmed on appeal in a decision without written opinion.

---

[6]In *Bowers,* the Florida Supreme Court held that an officer, not involved in an investigation, cannot rely on the fellow officer rule to testify regarding what the initial officer who conducted a vehicular traffic stop told him in order to establish the validity of the initial stop. *See State v. Bowers,* 87 So. 3d 704, 710-711 (Fla. 2012).

*See Cade v. State,* No. 3D17-871, 227 So. 3d 585 (Fla. 3rd DCA 2017) (unpublished table decision); [ECF No. 18-3, Ex. QQ at 148].

Petitioner's charges arose following Petitioner's April 13, 2014 arrest based on an active Monroe County warrant for failing to register as a convicted felon. [ECF No. 18-2, Ex. F at 25]. At the time of Petitioner's arrest, Deputy G. Bragg ("Deputy Bragg") and Sergeant J. Slough ("Sgt. Slough") found Petitioner in possession of a steel kitchen knife and a crack cocaine rock. [*Id.*]. The cocaine rock field testified positive for cocaine and weighed 0.5 grams. [*Id.* at 26].

According to Petitioner's arrest warrant, after being briefed by Deputy Bragg, Detective Bean met with the Petitioner who advised him that he would provide narcotics-related intelligence in exchange for not being prosecuted on the charged offenses. [ECF No. 18-2, Ex. F at 25]. Detective Bean agreed he would not seek prosecution of Petitioner if he would become a "confidential informant" and provide "substantial assistance." [*Id.*]. However, Detective Bean stated that if Petitioner did not provide any assistance, he would seek Petitioner's arrest. [*Id.*]. After April 13, 2014, Detective Bean attempted to contact Petitioner to document him as a confidential informant, but Petitioner would not answer or return any of the detective's phone calls. [*Id.* at 26]. As a result, Detective Bean obtained a warrant for Petitioner's arrest arising from his possession of cocaine and a concealed weapon on April 13, 2014. [ECF No. 18-3; Ex. F at 22-24]. The arrest warrant further noted that Petitioner was initially arrested based on an outstanding Monroe County Warrant, MCS014ARR003882, for possession of a weapon by a convicted felon and possession of cocaine, executed by Judge Garcia on July 18, 2014. [ECF No. 18-2, Ex. F at 26].

Contrary to Petitioner's representations that he "abided" by his agreement with Detective Bean, the detective's arrest warrant proves otherwise. Moreover, the arrest warrant clearly stated that Petitioner's arrest was based not only on the evidence seized following his April 13, 2014

arrest, but because of an outstanding July 18, 2014 arrest warrant issued by Judge Garcia. It was reasonable for Detective Bean to rely upon the probable cause determinations made by Detective Bragg and Sgt. Slough regarding the Petitioner's arrest on April 13, 2014, based on the outstanding warrant. *See Killmon v. City of Miami,* 199 F. App'x 796, 800 (11th Cir. 2006).

Under Florida law, the "felony officer rule" allows an arresting officer to assume probable cause to arrest a suspect from information supplied by other officers. *See Killmon v. City of Miami,* 199 F. App'x at 800 (citing *Voorhees v. State,* 699 So. 2d 602, 609 (Fla. 1997)); *State v. Boatman,* 901 So. 2d 222, 225 (Fla. 2nd DCA 2005); *Huebner v. State,* 731 So. 2d 40 (Fla. 4th DCA 1999).

As applied, even if counsel had sought dismissal of the Information on the basis alleged, Detective Bean would have testified that Petitioner never provided substantial assistance, as he was unable to contact Petitioner following his arrest in order to document him as a confidential informant. Detective Bean would have also testified that Petitioner's arrest was lawful as he had probable cause to arrest Petitioner based on the representations of Deputy Bragg and Sgt. Slough.

Petitioner has not met his burden of establishing entitlement to relief on these claims either in the state forum or his habeas proceeding. He has not shown that he has suffered *Strickland* prejudice arising from counsel's failure to pursue this non-meritorious claim. Relief is not warranted on this basis, and the state court's rejection of the claims should not be disturbed here.

### F. Failure to Seek Dismissal of Case No. 2014-CF-149-AM

In **claim 6,** Petitioner claims trial counsel failed to advise him of viable defenses to the charges in Case No. 2014-CF-158-AM, and instead misadvised him that he had none. [ECF No. 8 at 14]. Thus, he suggests counsel affirmatively misadvised him to accept the state's consolidated plea offer. [*Id.*]. Petitioner is not entitled to relief on this claim.

When raised in the Rule 3.850 proceeding, Petitioner explained he had numerous discussions with counsel, during which he provided counsel with details regarding the facts and circumstances surrounding the three cases and requested that his attorney advise him of any viable defenses. [ECF No. 18-3, Ex. LL at 70]. Petitioner relies upon counsel's testimony during the motion to withdraw proceedings where counsel testified that Petitioner did, in fact, have viable defenses. [*Id.* at 71]. As discussed previously, however, counsel explained during those proceeding that no investigation or depositions were taken because the Petitioner was only interested in obtaining an agreement to be released on furlough.

The trial court denied relief of this claim, finding that "by pleading in haste, the Defendant forestalled efforts by defense counsel to explore viable defenses." [ECF No. 18-3, Ex. NN at 103]. That denial was affirmed on appeal. *See Cade v. State,* No. 3D17-871, 227 So. 3d 585 (Fla. 3rd DCA Jun. 28, 2017) (table) (unpub.). [ECF No. 18-3, Ex. QQ at 148].

Petitioner accepted the plea agreement knowing that if he failed to surrender the court would impose the statutory maximum authorized by law. Also, as discussed in relation to claims four and five, Petitioner has not demonstrated deficiency or prejudice under *Strickland* arising from any purported misadvice.

The record reveals he admitted under oath to having discussed the defenses with counsel and was satisfied with counsel's representation. [ECF No. 19-1, Ex. XX at 12-26]. Notably, defense counsel, who had been re-appointed for the status hearing, informed the court that he could not, in good conscience, go forward with a plea without reviewing the discovery in all three cases. [*Id.*]. Petitioner, however, wanted the matter set over on the court's calendar. [*Id.*].

Before Petitioner accepted the plea offer during the November 12, 2014 hearing, defense counsel advised Petitioner not to accept the plea at that time. [ECF No. 19-1, Ex. YY at 104-05].

Counsel advised Petitioner to "at least take some time" to consider the terms of the plea, and "not" accept the plea at that time. [*Id.* at 106]. Petitioner chose not to do so.

Further, Petitioner was representing himself until one week prior to the change of plea, and given the above representations by counsel, Petitioner cannot satisfy *Strickland's* prongs. Petitioner has not alleged sufficient facts in the state forum or this habeas proceeding to prove that his arrest on April 13, 2014, based on an outstanding warrant, was unlawful. He has also not demonstrated that the evidence seized at that time and his subsequent arrest was unlawful. Rejection of the claims in the state forum should not be disturbed here.

### G. Failure of Collateral Counsel to Impeach APD Coburn

In **claim 8,** Petitioner asserts that Attorney Heffernan was ineffective for failing to impeach APD Coburn during the hearing on Petitioner's motion to withdraw his guilty plea. [ECF No. 8 at 16]. Petitioner is not entitled to relief, having failed to establish either deficiency or prejudice under *Strickland*.

In ground nine in his Rule 3.850 motion, Petitioner concedes that APD Coburn admitted at the hearing that Petitioner did, in fact, ask him to file certain pre-trial motions before entering into the guilty plea, but during cross-examination, APD Coburn could not recall whether one of the motions was a motion to suppress. [ECF No. 18-3, Ex. LL at 44, 80-81]. According to Petitioner, this statement contradicts counsel's prior statements that Petitioner had "viable defenses." [*Id.* at 81]. He faults Attorney Heffernan for not questioning APD Coburn regarding why no motion to suppress was ever filed. [*Id.*]. He claims further and more specific cross-examination would have established APD Coburn's ineffectiveness. [*Id.*].

The trial court denied relief on this claim arguing that "there were no inconsistent statements to be impeached, only memory lapses." [ECF No. 18-3, Ex. NN at 104]. In so ruling,

the court found Petitioner "merely critiques conflict-free counsel's results from examining trial counsel during the hearing on the Defendant's motion to withdraw his plea." [*Id.*]. The trial court determined it "will not critique counsel's methods and results." [*Id.*]. The rejection of the claim was subsequently affirmed on appeal. *See Cade v. State,* No. 3D17-871, 227 So. 3d 585 (Fla. 3rd DCA 2017) (unpublished table decision); [ECF No. 18-3, Ex. QQ at 148].

The trial court's findings are entitled to the presumption of correctness. Review of the hearing on Petitioner's motion to withdraw his guilty pleas reveals that APD Coburn was extensively cross-examined by Attorney Heffernan regarding his recollection of events leading up to and culminating in Petitioner's guilty plea. Petitioner has not shown deficiency, much less prejudice under *Strickland* arising from counsel's failure to further cross-examine APD Coburn as suggested. Even if counsel had done so, Petitioner cannot demonstrate that the court would have granted his motion to withdraw the guilty pleas. For this additional reason, Petitioner cannot demonstrate prejudice under *Strickland.* Thus, the rejection of the claim in the state forum should not be disturbed here. *Williams, supra*.

## VII. Instruction Re *Clisby* Rule

The Court is mindful of the *Clisby*[7] rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *Clisby v. Jones*, 960 F.2d 925, 936-36 (11th Cir. 1992). This court has considered all of Petitioner's arguments in support of his claims for relief. *See Dupree v. Warden,* 715 F.3d 1295, 1299 (11th Cir. 2013) (finding that courts shall review petitioner's claims so long as the claims are presented in a clear and simple language so that the court may not misunderstand it). Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the

---

[7]*Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent a claim was not considered in the state forum, under *de novo* review, the claim does not warrant relief. Whether a precise argument was not specifically addressed herein or in the state forum, all arguments were considered and found to be devoid of merit, even if not discussed in detail.

## VIII. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the Petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.,* 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle Petitioner to relief. *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before this Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not warranted.

## IX. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). See 28 U.S.C. § 2253(c)(1); *Harbison v. Bell,* 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000) and *Wilkinson v. Dotson,* 544 U.S. 74, 78-83 (2005)). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack,* 529 U.S. at 484.

Upon consideration of the record, this court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, Petitioner may bring this argument to the attention of the District Judge in objections.

## X. Recommendations

Based upon the foregoing, it is **RECOMMENDED** that:

1.      the federal habeas petition be **DENIED** on the merits;

2.      judgment be entered in favor of Respondent;

3.      a certificate of appealability be **DENIED**; and,

4.      the case **CLOSED**.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

SIGNED this 23rd day of July, 2021.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    T. Cade, *Pro Se*
        DC#K04474
        Zephyrhills Correctional Institution
        Inmate Mail/Parcels
        2739 Gall Boulevard
        Zephyrhills, FL 33541

        Michael W. Mervine, Ass't Atty Gen'l
        Office of the Attorney General
        Department of Legal Affairs
        444 Brickell Avenue, Suite 650
        Miami, FL 33131
        Email: CrimAppMia@MyFloridaLegal.com